UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD JANOIKO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARINA MARCHAK, *et al.*,<br><br>　　　　Defendants. | Case No. 1:24-cv-00652-CDB (PC)<br><br>FIRST SCREENING ORDER<br><br>(Doc. 1) |

　　　　Plaintiff Richard Janoiko ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983.  Plaintiff initiated this action with the filing of a complaint on June 3, 2024.  (Doc. 1).  Plaintiff asserts an Eighth Amendment medical care deliberate indifference claim against Defendants Marina Marchak, Steven Galarza, and Vahid Nikzad (collectively, "Defendants"), all of whom are doctors are Corcoran State Prison ("CSP") and are sued in their individual capacities.  (*Id.* at 2, 4).  Plaintiff alleges Defendants violated his constitutional rights while under their care at CSP when they were deliberately indifferent to his serious medical condition that worsened due to their actions and inactions.  (*Id.* at 4).  Specifically, Plaintiff alleges the facts contained in the medical records show Defendants' deliberate indifference caused him to develop and contributed to worsening tardive dyskinesia ("TD") and other symptoms.  (*Id.* at 3).

///

**I.   SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

**II.   PLEADING REQUIREMENTS**

   **A.   Federal Rule of Civil Procedure 8(a)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" (*Id.* (quoting *Twombly*, 550 U.S. at 570)). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. (*Id.* (quoting *Twombly*, 550 U.S. at 556)). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. (*Id.*). However, a court "is not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal

pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983, if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act which he is legally required to do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct participation, a government actor may be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

## III. DISCUSSION

### A. Plaintiff's Allegations[1]

Plaintiff names as Defendants CSP doctors Marina Marchak, Steven Galarza, and Vahid Nikzad, and sues them in their individual capacities. (Doc. 1 at 2, 4). In his request for relief, Plaintiff seeks: a declaration that his constitutional rights were violated; a jury demand;

---

[1] The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

3

compensatory damages of $300,000 against each Defendant jointly and severally; punitive damages of $300,000 against each Defendant; costs and attorneys' fees; and any additional relief the Court deems proper or necessary. (*Id.* at 9). The complaint is signed and dated May 22, 2024. (*Id.*). The complaint notes that "Prisoner Jeffrey McCreary" helped prepare the complaint. (*Id.*).

Plaintiff asserts a single medical care claim under the Eighth Amendment and cites to *Estelle v. Gamble*, 429 U.S. 97 (1976). (*Id.* at 3). Plaintiff asserts that during his prison term, Dr. Saritha Sunkara tested Plaintiff for involuntary movements due to psychiatric medications on February 27, 2021, on May 19, 2021, and July 26, 2021, and found no movements and no TD. (*Id.*). On August 6, 2021, Defendant Dr. Marchak tested Plaintiff and assessed a movement score of "AIMS 4 to 5" and later on August 13, 2021, "raised it to AIMS 9[.]" (*Id.*). Despite "all the previous zero test results[,]" Dr. Marchak "claimed that Plaintiff had TD for many years." (*Id.*). Plaintiff alleges Dr. Marchak's "claim go[e]s against all the previous tests" and "highlights that this doctor did nothing to change the Zyprexa Plaintiff was on that is known to cause TD." (*Id.*). Plaintiff alleges that when "suddenly movements started and then quickly grew worse" that Dr. Marchak "did nothing" and "instead of following training and warnings about TD" he "invented a false history." (*Id.* at 5). Plaintiff alleges Dr. Marchak "was deliberately indifferent to an emerging case of TD that could have been stopped early." (*Id.*).

Plaintiff alleges Defendant Dr. Galarza "created medical records" on February 24, 2022, and on July 18, 2022, "stating Plaintiff had no movements even though the official movement score was updated on" November 1, 2022 "to AIMS 13." (*Id.* at 3). By March 27, 2023, Dr. Galarza "stopped the Zyprexa due to worsening movements, requested a neurology consultation, and started Plaintiff on Seroquel, another drug known to cause TD." (*Id.*). Plaintiff alleges Dr. Galarza "somehow missed movements for months and then suddenly found the movements so severe that he put in a request for a specialist[,] [a]t which point he discontinued a known TD causing drug and replaced it with another TD causing drug." (*Id.* at 5). Plaintiff alleges Dr. Galarza "[n]ot caring which drug to replace it with when there were so many choices that don't cause TD was deliberate indifference." (*Id.*).

Plaintiff alleges Defendant Dr. Nikzad, who had Plaintiff's record in front of him including

4

the records of "the latest movement score of AIMS 33 given just one month after changing to Seroquel" on April 23, 2023, saw Plaintiff on September 14, 2023, and "documented that Plaintiff wanted to discontinue Seroquel because it causes TD[.]" (*Id.* at 4). Dr. Nikzad "admits that he talked Plaintiff into continuing to take [Seroquel]' which "caused Plaintiff to be on Ingrezza to combat his TD while taking Seroquel … for several months until another [doctor] finally discontinued the Seroquel." (*Id.*). Plaintiff alleges that Dr. Nikzad talked him "into continuing to take the TD causing drug" while Plaintiff was suffering "extreme movements[,] even involuntarily hitting himself," which "was beyond deliberate indifference, [and] it was intentional infliction of pain and suffering." (*Id.* at 5).

Plaintiff alleges he suffers injuries as he developed TD, "uncontrollable repetitive movements of his head, mouth, tongue, [and] hands that make it extremely hard to walk, talk, eat, and has brought [him] severe physical, social, and emotional consequences." (*Id.*). He alleges that his TD is severe and his head "is constantly thrown back" and "hard" that "he now has bone spurs[.]" (*Id.* at 5). At a "recent hospital stay[,]" an E.R. doctor gave him a permanent neck brace and a spine brace. (*Id.*). Plaintiff alleges that on good days, "he chomps his gums, his hands jerk so much [that] it takes him [two] minutes to dial the phone, and [he] must live with the ridicule and avoidance of those around him." (*Id.*). On bad days, "his tongue jump[s] out of his mouth, and arms flailing has cause him to knock cellmates['] property and even a TV off counters and made it very difficult to eat." (*Id.*). He alleges that "[b]ecause of the movements [he has] bone spurs in [his] neck, and problems with [his] back, and they gave [him] a neck and back braces, and will require surgery." (*Id.* at 6). He alleges that in the approximately two years he suffered from TD, he has "deteriorated to the point where [he] now" permanently ambulates with a walker and "must wear" back and neck braces "under [his] big, bright yellow mobility vest." (*Id.*). He has "severe pain" and his "ruined life now comes with the fearful knowledge that soon [he] must submit to a dangerous surgery to fuse the bones in [his] neck." (*Id.*). He "cannot stand for more than ten minutes, and must utilize the seat in [his] walker constantly during the day." (*Id.*).

He alleges that each Defendant, "based on the facts above taken directly from Plaintiff's medical records, showed deliberate indifference to [his] serious medical condition[] that worsened

due to their actions and inactions." (*Id.* at 4).

Plaintiff cites to case law to show that "[i]t has been proven that Zyprexa and Seroquel cause TD." (*Id.*) (citing *Lucero v. Colvin*, No. CIV-15-0434 LAM, 2016 WL 8230654 (D. N. M., Aug. 17, 2016) (Zyprexa); *Patteson v. Maloney*, No. 10-1760 (JEB), 2013 WL 5133495 (D. D. C. Sept. 16, 2013) (Seroquel)). Plaintiff alleges "TD has been a known problem by the American Psychological Association for decades" and "they created a task force who published a report in 1980 causing them to send a letter to all psychiatrists warning them of TD." (*Id.*) (citing *Washington v. Harper*, 494 U.S. 210 (1990)). Plaintiff alleges that "[e]very two years[,] California's Legislature creates a 'TD Awareness Week' … because it is estimated over 60,000 Californians suffer [from] TD[.]" (*Id.*).

Plaintiff attaches to his complaint three exhibits. First, he attaches "Health Care Grievance #23001545" which documents: (a) on August 10, 2023, "an abnormal EKG due to Propranol which was recently started and is known to cause low blood pressure and heart problems"; (b) on September 14, 2023, he "was sent to the E.R. for low blood pressure, given IV fluids"; (c) on September 20, 2023, "TTA … for chest pains"; (d) on October 13, 2023, lumbar x-ray due to back pain; and (e) on October 27, 2023, a hip x-ray due to pain. (*Id.* at 6). Second, he attaches a reasonable accommodation form that was granted and alleges that he was issued a "mobility impaired" vest and a walker. (*Id.*). Third, he attaches another reasonable accommodation that was granted and alleges a "2-wheel walker caused fall, changed to wheelchair, then 4-wheeled walker [and] walker and vest made permanent." (*Id.*).

**B.   Discussion**

   1.   <u>Governing Authority on Eighth Amendment Deliberate Indifference to Serious Medical Need</u>

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle*, 429 U.S. at 104. "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled

on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." (*Id*. at 847). In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

(9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" (*Id*. at 1057) (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" (*Id*.) (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct.  *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

2. <u>Analysis</u>

Here, liberally construing the complaint, the Court concludes that Plaintiff states a cognizable claim under 42 U.S.C. § 1983 for medical care under the Eighth Amendment against Defendants.  As set forth in more detail below, each Defendant is alleged in general to have missed or failed to identify and diagnose a serious condition (TD) and prescribed or mis-prescribed medications that are known to cause or exacerbate the effects of TD.

As to Dr. Marchak, Plaintiff alleges that during his term of incarceration, he "was tested for involuntary movements due to psychiatric medications" on several occasions by various doctors, including Defendants, and when Dr. Marchak later determined that Plaintiff "had TD for many years" he did "nothing to change the Zyprexa Plaintiff was on that is known to cause TD" instead "of following training and warnings about TD."  This satisfies the first prong.  Plaintiff alleges that Dr. Marchak "invented a false history" and "was deliberately indifferent to an emerging case of TD that could've been stopped early" and "worsened due to [his] actions and inactions."  Plaintiff details the harm he faced from being prescribed the "TD causing drugs" of Zyprexa and Seroquel and having developed TD and other symptoms, and have caused him "severe physical, social, and emotional consequences."  Plaintiff's allegations that Dr. Marchak failed to modify Plaintiff's prescription of Zyprexa in response to his TD diagnosis, falsification of records, and the resulting harm Plaintiff faced satisfies the second prong.

The undersigned similarly finds the claim sufficiently alleged against Dr. Galarza. Plaintiff alleges that Dr. Galarza created medical records indicating Plaintiff "had no movements" even though his movement score was later updated with a higher score and waited over four months before Dr. Galarza "stopped the Zyprexa due to worsening movements[,]" requested a specialist for consultation, and started Plaintiff on Seroquel. Plaintiff alleges Dr. Galarza, in "not caring" about selecting a drug for replacement despite the "many choices" available that do not cause TD was "deliberate indifference."

Likewise, Plaintiff sufficiently alleges a claim against Dr. Nikzad. Plaintiff alleges that Dr. Nikzad, despite having available to him records which indicate a high movement score "just one month after changing to Seroquel" and over Plaintiff's desire to discontinue the use of Seroquel as he suffered extreme and involuntary self-inflicting movements, "admits that he talked Plaintiff into continuing to take" Seroquel for several months until another doctor discontinued its use on Plaintiff. Plaintiff alleges that Dr. Nikzad's conduct was "beyond deliberate indifference" and was "intentional infliction of pain and suffering."

Thus, and liberally construing the complaint for purposes of screening, the undersigned finds Plaintiff's complaint sufficiently alleges a claim for medical indifference to serious medical needs against each of the named Defendants. *Wilhelm*, 680 F.3d at 1122.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, it is HEREBY ORDERED:

1. This action proceeds on Plaintiff's complaint, filed on June 3, 2024 (Doc. 1) against Defendants Marina Marchak, Steven Galarza, and Vahid Nikzad for a claim under the Eighth Amendment for deliberate indifference to serious medical needs; and

2. A separate order will issue regarding service of the complaint.

IT IS SO ORDERED.

Dated: **April 18, 2025**                                    _____
                                                                               UNITED STATES MAGISTRATE JUDGE